BOWES, Judge.
Defendants, Miller’s Group Insurance Company, Joseph Legendre and Shirley L. Legendre, appeal a judgment of the district court finding Mrs. Legendre 30% at fault in an automobile-motorcycle collision and casting defendants in judgment for $28,345.68, plus interest and their pro rata share of court costs; Ms. Walker, as defendant in reconvention, was held liable for $945.70, plus interest, 70% of the Legendre’s property damage.
On February 11, 1981, plaintiff, Theresa Walker was operating a 1977 Yamaha motorcycle, owned by plaintiff, L.J. Marie, Jr., in a southerly direction on Central Avenue in Westwego, Louisiana. Shirley Legendre, wife of Joseph A. Legendre, was driving the family’s 1976 Ford Sedan in a westerly direction on U.S. Highway 90B (the Westbank Expressway). The two vehicles collided in the left-hand lane, adjacent to the median, at the intersection of U.S. 90B and Central Avenue, on the westbound side of the expressway.
Appellants assign the following two issues as error:
1. The trial court was in error in finding that defendant Shirley Legendre was negligent, especially to the extent of thirty per cent (30%), as there was no evidence presented at trial which established that she acted negligently.
2. The trial court was in error in finding that defendant Shirley Legendre was negligent, especially to the extent of thirty per cent (30%), as such a finding is inconsistent with the trial court’s stated findings as to how the accident occurred.
As we see it, the issue of defendants’ liability centers on the following major questions: (1) The location of the Legendre’s vehicle moments before the accident; (2) the speed of that vehicle, and (3) the location of the plaintiff’s motorcycle at the time of the accident.
At trial, Mrs. Legendre testified that she was traveling at 30 to 35 miles per hour just before the accident. On the other hand, Lisa Bocage, an independent eyewitness, testified: “It [the Legendre auto] was traveling, I think, at kind of a high rate of speed for that time of the afternoon ... ”, and Don Lewis, the investigating officer, testified that Mrs. Legendre told him she was traveling at 45 miles per hour just prior to the accident (the police report also reflects 45 miles per hour for the defendants’ vehicle). Thus we have our first discrepancy in the evidence presented to the trial court.
Next, there is the paramount question of the location of the Legendre automobile just prior to the accident. Here, too, the testimony is inconsistent. Mrs. Legendre, and two of her three guest passengers, stated that the auto was in the left-hand *691 lane for at least one full block before the accident; the third lady could not recall the car’s position. Ms. Walker and her guest passenger on the motorcycle aver that the defendants’ automobile was in the right-hand lane, following a school bus, and, as the bus slowed to make a right-hand turn at Central Avenue, the car unexpectedly came around the left side of the bus and struck the cycle.
The third point on which there was divergent testimony presented to the trial judge concerns the location of the motorcycle at the time of impact. Plaintiff Walker and her passenger insist that they were inside the median area when struck by the defendants’ vehicle. Mrs. Legendre and her passengers, on the other hand, insist that the collision occurred in the left-hand lane of traffic. In connection with this, Ms. Walker and her witness testified that the car struck the rear portion of their vehicle, whereas the defense’s testimony is that the cycle was struck “broadside.”
Hitherto, the trial judge faced the choice of believing principals and/or interested parties on one side or the other. However, the judge was not relegated to making such a choice since the accident was witnessed by an independent third party, Lisa Bocage, a mail carrier. Ms. Bocage stated:
Q. Where was the motorcycle in relation to the westbound lanes of the Westbank Expressway when you first saw it?
A. Okay. It was approaching the stop sign.
Q. And where was the stop sign located?
A. On the corner of the Westbank Expressway service road and Central Avenue.
Q. All right. Did you see the motor bike stop?
A. Yes.
Q. Than what happened after that?
A. Okay. There was a school bus, and there was a car behind the school bus. And the car came from behind the school bus and hit Theresa and the other girl on the bike. And I saw them rolling in the street. [...]
Q. Describe what happened to the motorcycle at that point in time.
A. Okay. I saw the motor bike get hit in the back. All right. Then I saw the lady rolling in the street. [...]
Q. Describe what the motorcycle did.
A. Proceeding to cross the Westbank Expressway. All right. And then the school bus right here (indicating) was turning, and then they had a car that came from behind like this and hit the girls on the bike.
Q. When you say that the car went like this, what do you mean?
A. The car came from behind the school bus.
Q. Did it change lanes?
A. Yeah. It had to.
Q. What lane did it change into?
A. The left lane.
Q. Into the left lane?
A. Yes.
Q. And how far away from Central Avenue was it when it first changed into the left lane? Can you give me a distance, approximately?
A. Say maybe about a car length or two. Maybe about a car length.
Q. Can you tell me about how fast it was going?
A. It was fast. It was a high rate of speed.
Q. Was the motor bike stopped or moving at the time it was hit?
A. It was stopped because she had to stop there. You have to stop in the middle of the Westbank Expressay because of the traffic on the other side. [...]
Q. Where was the motor bike when it was hit?
A. Right here (indicating), by the median. You know, where they had— [...]
Q. Now, my question to you is this: Was the motor bike on Central Ave *692 nue, was it — had it passed out of the left lane to the break in the median when it was hit?
Yes. [...] >
Had it crossed the left lane entirely? p
Yes. [...] !>
You said that the car struck the back of the motor bike? O
Yeah. t>
Describe what part of the motor bike it hit. By “back”, what do you mean? <©
Like the last tire, what I would consider the back. >
The trial judge heard testimony on April 1, 1985 and then on May 17, 1985. At the close of the trial, he stated from the bench his findings in the case:
I truly feel that the defendants’ actions were a cause in fact of the plaintiffs’ injuries. We had a situation whereby testimony came out throughout [sic] vehicle struck the bike. It will come out later in other things to the effect there were, bike was seen as a van was turning, I saw the bike coming, etcetera, et-cetera. I find it was a cause, in fact. Did the defendant, Mrs. Legendre have a duty? Yes, she did, to avoid the accident. We all have duties to avoid the accident where we can and I think that in spite of the fact that no one can be held to act extra-ordinarily prudent or heroic person asfaras [sic] knowing what to do or be a racecar driver, still and all even as a reasonably prudent person when you see things as I appreciated the testimony that someone is coming across the Expressway that I think that more could have been done. Was there a breach of defendant’s duty? The duty was to avoid the accident when possible. I know things were done, brakes were hit, all the occupants testified to that. There was still steps I feel could have and should have been done and the reasonably prudent person would have done them from the moment this scenario began when the bike was seen and as the van was turning and so forther [sic].
So with that, I find the defendant negligent. However, I find also that the plaintiff contributed to her own problems. I find her actions were caused [sic], in fact, of her own injuries. The testimony was to the effect that she’s coming down the Service Road, stopped there supposedly stopped at the stop sign at Central and Expressway as will be elaborated on a little more, her own actions contributed as I say to her own injuries. She certainly had a duty to avoid the injuries. She should have made sure that when crossing the Expressway that traffic was clear or no other cars were coming.
Her testimony was to the effect that as she saw the van turning, whatever it was, in fact, she saw the other car behind it. I think the reasonably prudent person crossing a thoroughfare would say whatever lane it was in if it was behind the thing it may come around if it was in the left lane already, it may keep on going. I think what happened is the young lady having ridden these bikes before knew they had enough acceleration, enough power even with the passenger on board to scoot across and it was the chance that she took.
[...] I think the bike was sticking out, how much in the Expressway, I don’t know but it was enough to cause the plaintiff alarm. She breached her duty as I say by going through, observing somewhat the traffic and proceeding anyway.
We can’t ascribe to everybody the same degree of care but someone who by their own admission has ridden these motorbikes before knows they’re extremely dangerous because they offer no protection. Their advantage is good gas mileage, acceleration but if you get tipped, you’re in big trouble. We saw that the damage to the bike was slight. Damage to her was significant to say the least.
I weighed all the testimony. I’ve got some thirty-five or forty pages of notes. I went back over. I took into account the conflicts in the testimony and there were many which can be explained away, *693 but I find that the young lady was seventy per cent negligent of her own accord. She had a big pile of negligence there and I feel very sorry for her but we tell the jury don’t let sympathy or prejudice or whatever get in the way and I tried not to do that here.
Upon review, an appellate court has the duty to give great weight to the factual findings of the trial court. We are prohibited by the jurisprudence from substituting conclusions we may have reached for conclusions reached by the trial court as long as those conclusions are supported by reasonable evaluations of credibility and based upon a rational interpretation of facts. We find that to be the case here. Although he might have expressed his reasoning more clearly, it is apparent from the above that the zealous trial judge paid great attention to the conflicting evidence and carefully evaluated same. The record supports his judgment and we cannot say that it is manifestly erroneous.
Accordingly, we affirm the judgment of the district court. Each party is to pay his own costs of this appeal.
AFFIRMED.